IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
DEUTSCHE BANK NATIONAL TRUST        )
COMPANY, AS TRUSTEE FOR THE         )
REGISTERED HOLDER OF MORGAN         )
STANLEY ABS CAPITAL I INC. TRUST    )
2007-HE1 MORTGAGE PASS-THROUGH      )
CERTIFICATES, SERIES 2007-HE1,      )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )    No. 12 C 759
                                    )
ERNESTO ADOLFO, NEW CENTURY         )
MORTGAGE CORPORATION,               )
                                    )
        Defendants.                 )
```

**MEMORANDUM OPINION**

Before the court is defendant Ernesto Adolfo's motion to dismiss. For the reasons explained below, we deny Adolfo's motion.

**BACKGROUND**

On August 4, 2006 Adolfo executed a promissory note in favor of New Century Mortgage Corporation ("New Century") in the amount of $316,000.00 to acquire property in Skokie, Illinois. (See Adjustable Rate Balloon Note, dated Aug. 4, 2006, attached as Ex. 4 to Pl.'s Compl. (hereinafter, the "Note").) The Note was secured by a mortgage executed the same day. (See Mortgage, dated Aug. 4, 2006, attached as Ex. 3 to Pl.'s Compl.) NC Capital Corporation, which appears to be affiliated with New Century, sold certain loans to Morgan Stanley Mortgage Capital, Inc. (See NC Capital Purchase

Agreement, attached as Ex. Q to Pooling and Servicing Agreement ("PSA"), dated Jan. 1, 2007, available at http://www.sec.gov/Archives/edgar/data/1385840/000091412107000322/ms7263661-ex4.txt.)[1] Morgan Stanley Mortgage Capital, Inc. resold those loans to Morgan Stanley ABS Capital I, Inc. (the "Depositor" under the PSA), which in turn sold them to plaintiff Deutsche Bank National Trust Company ("Deutsche Bank"). (See Representations and Warranties Agreement, dated Jan. 26, 2007, attached as Ex. CC to PSA; see also PSA § 2.01.) Deutsche Bank holds the loans (the "Trust Fund") for the benefit of investors who purchased certificates entitling them to a share of the revenues derived from the loans. (See PSA § 2.01.) The loans included in the Trust Fund were listed on a "Mortgage Loan Schedule," and Deutsche Bank contends that Adolfo's loan was among them. (See infra.)

Deutsche Bank alleges that Adolfo is currently in default and seeks to foreclose on his property. (See Compl. ¶ 10(j).) It has attached to its complaint copies of the Note, the Mortgage, and an Assignment of Mortgage ("Assignment") between New Century and Deutsche Bank. (See Assignment, dated Nov. 30, 2011, attached as Ex. 5 to Compl.) The Note does not contain any indorsements, contrary to the PSA's requirements, and the Assignment post-dates the PSA by nearly four years. Adolfo has moved to dismiss Deutsche

---

[1]  The parties agree that we may take judicial notice of the PSA and related agreements. (See Def.'s Mot. at 4; Pl.'s Resp. at 4.)

Bank's complaint on the grounds that these defects mean that the bank does not own the indebtedness and therefore lacks standing to foreclose. See Fed. R. Civ. P. 12(b)(1).

**DISCUSSION**

"Standing is an essential component of Article III's case-or-controversy requirement." Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443 (7th Cir. 2009). Adolfo has made a "factual challenge" to Deutsche Bank's standing by introducing evidence outside the pleadings (namely, the PSA) in an attempt to show that, contrary to the complaint's allegations, Deutsche Bank lacks standing to sue. See id. at 444 ("[A] factual challenge lies where the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction.") (citation and internal quotation marks omitted). To overcome a factual challenge to standing, the plaintiff must come forward with "competent proof" that standing exists. Id. Our Court of Appeals has "interpreted 'competent proof' as requiring a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." Retired Chicago Police Ass'n v. City of Chicago, 76 F.3d 856, 862 (7th Cir. 1996).

**A. Whether the Note Is Subject to the PSA**

The PSA refers to, but does not attach, the Mortgage Loan Schedule. After the parties briefed Adolfo's motion, we gave Deutsche Bank an opportunity to supplement the record with the

Mortgage Loan Schedule or other evidence indicating that Adolfo's loan was subject to the PSA. (See Order, dated Aug. 1, 2013.)[2] In response, it has provided a "free writing prospectus" ("FWP") that appears to list loans (including Adolfo's) subject to the PSA. (See FWP, attached as Ex. 1 to Pl.'s Supp. Resp., at 259.)[3] Adolfo objects that this exhibit is not part of the PSA and does not purport to transfer any interest in the scheduled loans. (See Def.'s Suppl. Reply at 2.)[4] We think that Adolfo is overstating Deutsche Bank's burden. The FWP, the incorporated prospectus (see FWP at 1), and the PSA all relate to the same transaction. It is possible that Adolfo's loan was included in the FWP, but omitted from the Mortgage Loan Schedule. But it seems highly unlikely given Deutsche Bank's possession of the Note, as evidenced by the

---

[2] As we indicated in our Order, Adolfo arguably conceded in his opening brief that the PSA's parties at least attempted to transfer his loan. (See Pl.'s Resp. at 4; but see Def.'s Reply at 6 (pointing out that the Mortgage Loan Schedule is not attached to the PSA filed with the SEC).) Nevertheless, it is Deutsche Bank's burden to establish with competent proof that it has standing, and it relies on the PSA to satisfy its burden. (See Pl.'s Mem. at 3-4 (arguing that the PSA transferred the Note within the meaning of Article 3 of the Uniform Commercial Code ("U.C.C.").) So, we concluded that it was appropriate to require additional evidence from Deutsche Bank establishing that the Note was sold in connection with the PSA.

[3] "[A] free writing prospectus is any written communication as defined in this section that constitutes an offer to sell or a solicitation of an offer to buy the securities relating to a registered offering that is used after the registration statement in respect of the offering is filed (or, in the case of a well-known seasoned issuer, whether or not such registration statement is filed) . . . ." 17 CFR § 230.405.

[4] Adolfo also challenges the document's provenance, pointing out that it was retrieved from a private online database ("SEC Info"), not the SEC's website. The FWP attached to Deutsche Bank's brief *was* filed with the SEC, and as Adolfo argued in his opening brief, we may take judicial notice of it. See FWP, available at http://www.sec.gov/Archives/edgar/data/1385840/000091412107000058/0000914121-07-000058.txt.

copy attached to its complaint. Moreover, Adolfo has not cited any other evidence — besides the purported defects we discuss below — suggesting that his loan was not transferred pursuant to the PSA. We conclude that the evidence produced by Deutsche Bank is sufficient, at this stage of the case,[5] to carry its burden to show that it acquired the Note pursuant to the PSA.

**B.  Whether Deutsche Bank Has an Enforceable Interest in the Note**

Standing alone, the absence of any indorsement on the Note — specific or in blank — does not defeat standing. "Under Illinois law, a negotiable instrument may be enforced by either (1) the holder of the instrument, or (2) a non-holder in possession of the instrument, who has the rights of a holder." HSBC Bank USA, N.A. v. Hardman, 12 C 00481, 2013 WL 515432, *4 (N.D. Ill. Feb. 12, 2013) (citing 810 ILCS 5/3-301 ("Person entitled to enforce instrument")). Deutsche Bank is not a "holder" because the Note is payable to a specific person (New Century) and it has not been indorsed. See id. (citing 810 ILCS 5/3-201 ("Negotiation")). But because it possesses the Note, (see supra), it may enforce it if it can show that it acquired New Century's rights in that instrument. See 810 ILCS 5/3-301 (ii) ("'Person entitled to enforce' an instrument means . . . a nonholder in possession of the instrument who has the rights of a holder . . . ."). As we just discussed,

---

[5]/  If Adolfo is unsatisfied, he is entitled to explore this issue in discovery.

Deutsche Bank has established a reasonable probability that the parties to the PSA intended to transfer the Note for the purpose of giving Deutsche Bank the right to enforce it.  See 810 ILCS 5/3-203(a)-(b) (a transferee who is not a "holder" (because the note is not indorsed) may enforce the note if it was transferred by the transferor for the purpose of giving the transferee that right).  However, Adolfo argues that the purported transfer was void because the parties failed to comply with the PSA's terms.

As a threshold matter, Deutsche Bank challenges Adolfo's authority to rely on the PSA.  As Deutsche Bank points out, many courts have held that mortgagors, who are not parties to the transactions securitizing their loans, cannot rely on a PSA's terms to defend against foreclosure.  See, e.g., Citibank, N.A. v. Wilbern, 12 C 755, 2013 WL 1283802, *5-6 (N.D. Ill. Mar. 26, 2013); HSBC Bank USA, N.A. v. Hardman, 12 C 00481, 2013 WL 515432, *6 (N.D. Ill. Feb. 12, 2013); Bank of New York Mellon v. Fleming, No. 11 C 3573, 2013 WL 241153, *2 (N.D. Ill. Jan. 18, 2013).  However, Illinois courts have recognized an exception to this general rule: "a borrower may raise a defense to an assignment that would render it 'absolutely invalid,' that is, void."  Bank of America Nat. Ass'n v. Bassman FBT, L.L.C., 981 N.E.2d 1, 7 (Ill. Ct. App. 2012) (quoting Livonia Property Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, L.L.C., 717 F.Supp.2d 724, 736 (E.D. Mich. 2010).  The Corpus Juris Secundum succinctly describes the exception and the rationale behind it:

> A debtor may, generally, assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, any matters rendering the assignment absolutely invalid or ineffective, and the lack of the plaintiff's title or right to sue; but, if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his or her shoes . . . . Obligors of a claim may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice.

6A C.J.S. Assignments § 132; see also Bank of America, 981 N.E.2d at 8 (quoting C.J.S. § 132). The cases that Deutsche Bank cites "paint with too broad a brush" insofar as they hold that a mortgagor cannot rely on a PSA for any purpose. Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 290 (1st Cir. 2013); see also id. at 291 (holding under Massachusetts law that "a mortgagor has a legally cognizable right to challenge a foreclosing entity's status qua mortgagee"). We turn, then, to whether the parties' failure to follow the PSA's requirements voided the attempted transfer of Adolfo's loan.

The PSA establishes a procedure for transferring notes purchased by the Depositor to the Trustee. Specifically, the PSA required the Depositor to deliver to the Trustee the original promissory note "bearing all intervening endorsements, endorsed 'Pay to the order of _____, without recourse' and signed (which may be by facsimile signature) in the name of the last endorsee by an authorized officer." (See PSA § 2.01(b)(i).) The parties did

not follow this procedure as evidenced by the fact that no indorsements appear on the Note. Adolfo argues that this renders the purported transfer *ulta vires* and therefore void. (See Def.'s Mot. at 10.) There is some support for this position. See New York Estates, Powers & Trusts Law § 7-2.4 ("If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is *void*.") (emphasis added).[6] However, we are persuaded by the courts that have held that a transfer that does not comply with a PSA is voidable, not void. See Calderon v. Bank of America N.A., — F.Supp.2d —, 2013 WL 1741951, *11-12 (W.D. Tex. Apr. 13, 2013) ("[U]nder New York law, a trustee's unauthorized transactions may be ratified; such transactions are, accordingly, voidable — not void.") (collecting cases); Bank of America, 981 N.E.2d at 8-10 (similar); cf. Glaski v. Bank of America, N.A., — Cal.Rptr.3d —, 2013 WL 4037310 (Cal. App. Ct. Aug. 8, 2013) (reaching the opposite conclusion). A contrary interpretation would injure the parties that the statute is intended to protect. The evident purpose of § 2.01(b) is to transfer the loans into the trust for the benefit of certificateholders in a way that avoids later challenges along the lines that Adolfo has pursued in this

---

[6]/ The PSA is governed by New York law. (See PSA § 10.03.)

case.[7]  But certificateholders would be harmed if they could not receive foreclosure proceeds because a transfer, otherwise effective under Article 3, did not comply with § 2.01(b).  We conclude that the transfer of the Note is voidable, at most, and therefore Adolfo cannot rely on noncompliance with the PSA to defeat foreclosure.

**C.  The Mortgage Assignment**

The Assignment, like the transfer of the Note, did not comply with the PSA's terms.  First, it was executed on November 30, 2011, long after the PSA's closing date.  (See PSA Art. I (setting a closing date of January 26, 2006).)  Second, it purports to assign the mortgage directly from New Century to Deutsche Bank, contrary to the chain of title that the PSA contemplates.  (See PSA § 2.01 (providing for the transfer of mortgages from the Depositor to Deutsche Bank, as trustee).)  Indeed, Adolfo questions — albeit only in his reply brief — whether New Century had the legal capacity to execute the Assignment in 2011.  (See Reply at 2-3 (citing New Century's 2007 bankruptcy)); cf. Nationwide Ins. Co. v. Central Laborers' Pension Fund, 704 F.3d 522, 527 (7th Cir. 2013) (arguments raised for the first time in a reply brief are waived). However, we agree with Deutsche Bank that these issues are

---

[7]  If the Note had been indorsed in blank as provided in the PSA, Deutsche Bank would have been entitled to enforce the Note simply by establishing possession.  See 810 ILCS 5/3-205 ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); cf. 810 ILCS 5/3-203, cmt. 2 ("The [unindorsed] instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed instrument by proving the transaction through with the transferee acquired it.").

academic.[8]  Under Illinois law, "the assignment of the mortgage note is sufficient to transfer the underlying mortgage." <u>Federal Nat. Mortg. Ass'n v. Kuipers</u>, 732 N.E.2d 723, 730 (Ill. Ct. App. 2000).  So, regardless of any defect in the 2011 Assignment, Deutsche Bank acquired the mortgage when it acquired the Note in 2007.[9]

## **CONCLUSION**

The defendant's motion to dismiss for lack of standing [24] is denied.  A status hearing is set for September 4, 2013 at 11:00 a.m.

DATE:    August 28, 2013

ENTER:   _____
         John F. Grady, United States District Judge

---

[8]  For the same reason, we need not address Adolfo's undeveloped argument that the belated Assignment adversely affected the trust's status as a Real Estate Mortgage Investment Conduit.  (<u>See</u> Def.'s Mot. at 9-10.)

[9]  Again, (<u>see</u> <u>supra</u> n.5), our order denying Adolfo's motion to dismiss does not prevent him from seeking evidence in discovery that would undermine Deutsche Bank's standing to pursue foreclosure.